Margaret R. LOTH and Carl C. Loth, Co-executors of the Estate of William Jefferson Loth, Jr., Deceased,

v.

The UNITED STATES.
No. 49849.

United States Court of Claims.
Jan. 31, 1956.

Frederick Bernays Wiener, Washington, D. C., for plaintiffs.

John R. Franklin, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The original plaintiff died in 1953. The suit is now prosecuted by his executors. The word plaintiff as used herein, will refer to the original plaintiff. This suit is for retired pay. Retired pay to the plaintiff as a Reserve officer disabled in line of duty was awarded and paid for a time, but the award was later revoked and payment was discontinued. This suit seeks to recover retired pay from the date of the discontinuance to the date of plaintiff's death.

After youthful service with the British Army from 1915 to 1918, the plaintiff was commissioned in the Officers' Reserve Corps of the Army of the United States in 1919. In March 1938 he was a captain, Quartermaster Corps Reserve, and was ordered to active duty with the Civilian Conservation Corps. In May of 1938 he became ill and was taken to Walter Reed General Hospital. There the first diagnosis of his ills was (1) sciatica, (2) arthritis, and (3) valvular heart disease. The condition of his heart caused much discussion in the Walter Reed staff. Major Best, the plaintiff's ward officer, thought the trouble was valvular, but Lt. Col. Berle, the cardiologist, thought it was a form of neurocirculatory asthenia which is not a serious heart disease, but a mere functional disorder of the heart. On July 28, 1938, the plaintiff appeared before an evaluation board, Major Best being the only medical witness. He had changed his opinion, and upon his testimony, the board diagnosed the plaintiff's condition as "neuro-circulatory asthenia, mild." A disposition board, of which Major Best was also a member, met on August 30, 1938, and made the same diagnosis. It found the plaintiff physically fit and recommended his return to duty. These findings were duly approved.

For some reason which does not appear in the record, the plaintiff was, on September 20, 1938, reported as not physically qualified for active duty and was transferred to the Inactive Reserve Section of the Officers' Reserve Corps. He was awarded disability benefits by the Veterans' Administration on the basis of thirty percent combined disability, ten percent of which attributable to neurocirculatory asthenia.

In February 1939 the plaintiff requested that a summary of his medical record be sent to his personal physician. The Adjutant General of the Army sent such a report. In it, no mention was made of valvular heart disease. The report concluded "In view of these facts it was believed that the evidence was insufficient to make a diagnosis of organic heart disease."

The plaintiff and his physician thereafter believed that he did not have heart disease in 1938.

The plaintiff lived actively and normally from the time of his transfer to the Inactive Reserve. After Pearl Harbor, he requested reinstatement to active duty. He was given a medical examination, the medical examiner having been advised of the defects for which he had been transferred to the Inactive Reserve, viz., sciatica, arthritis, and neurocirculatory asthenia. His medical report was satisfactory and it reported his heart as "normal." It was sent to the War Department which directed a further examination, including X-ray and cardiogram, and a report as to whether there was evidence of organic heart disease or neurocirculatory asthenia. After this examination, the medical examiner reported, "There is no evidence of heart disease or neuro-circulatory asthenia."

The War Department ordered the plaintiff to extended active duty effective April 4, 1942, in orders which noted that he was physically qualified. When he received these orders, he discovered errors in the report of his physical examination and reported the errors in a letter to the competent commander. One of the errors was a statement that he was not receiving disability compensation. The plaintiff reported that he was receiving such compensation, for the disabilities for which he had been placed in the Inactive Reserve in 1938. He was advised that he must relinquish his disability compensation, and he so advised the Veterans' Administration.

The plaintiff served creditably in the Army, and was promoted to the rank of major. In May of 1945, he suffered a heart attack and in October was sent to the Regional Hospital at Camp Lee, Virginia, where a medical board and a disposition board both diagnosed his illness as valvular heart disease. The disposition board designated his primary disease as having been incurred in the line of duty. The medical board made no statement in that regard, that not being, apparently, within the scope of its functions. The disposition board recommended that the plaintiff appear before an army retiring board which he did at Camp Lee on January 22, 1946. Both the medical witnesses before the board testified that in their opinion the plaintiff's disabilities had existed before he entered service, but that they had been aggravated by service, and hence, were incurred in line of duty. The board found that the plaintiff was permanently incapacitated for active service by reason of valvular heart disease and arteriosclerosis. He was thereupon relieved from active duty and ordered home.

On review of this decision, action on the foregoing findings was held in abeyance and the plaintiff was recalled to active duty at Walter Reed Hospital for further observation and treatment. He was admitted there on April 22, 1946. On June 10, he appeared before a new disposition board and on June 20 before a new medical board. He told both boards that at the time he entered active service a question had been raised about the condition of his heart, and X-rays and an electrocardiogram had been required. Both boards diagnosed the plaintiff's disabilities as valvular heart disease and neurotic depressive reaction, and held that both were incurred in line of duty.

On July 9, 1946, the plaintiff appeared before an Army retiring board at Walter Reed Hospital. That board was given the same information as the prior boards, and made the same decision. Its findings were duly approved and the plaintiff was certified to the Veterans' Administration for retired pay, effective July 24, 1946.

In May 1947, the Veterans' Administration sent the Adjutant General's office a letter stating that the plaintiff had been paid disability compensation, beginning in 1938 in consequence of his Civilian Conservation Corps service, on the basis of a thirty-percent combined degree of disability, ten percent of which was attributable to neurocirculatory asthenia. The letter enclosed a summary of the records of the plaintiff's 1938 Walter Reed hospitalization, which showed as we have seen, that his trouble was originally diag-

nosed as valvular heart disease, but later and finally as neurocirculatory asthenia. These papers, together with such papers as were in the plaintiff's personnel file in the Adjutant General's office, were forwarded to the Surgeon General. They came to the desk of Lt. Col. Jacobs, Medical Corps, who was then on duty in the Retirement Branch, Physical Standards Division, of the Surgeon General's office. The file which was before him did not contain the Adjutant General's letter to the plaintiff's physician advising that the plaintiff did not have organic heart disease, nor the letters written at the time of the plaintiff's entry into active service showing that the condition of the plaintiff's heart had been given particular attention at that time, because of his having been placed in the Inactive Reserve in 1938 because of ailments, including neurocirculatory asthenia.

Without obtaining the rest of the available information, Lt. Col. Jacobs prepared a communication, later sent on behalf of the Surgeon General, to the Adjutant General, stating that "The latest evidence in the record reveals that officer had valvular heart disease diagnosed at Walter Reed General Hospital in 1938 while on CCC duty"; that "There is evidence of apparent fraud in that officer failed to reveal the duration of his heart disease and that he was receiving 30% pension from VA, beginning October 1938, when asked duration of his disability." He recommended that the case be reopened.

This communication was referred by the Adjutant General to the Secretary of War's Personnel Board. That board, on July 8, 1947, wrote the Adjutant General that in its opinion the findings of the Walter Reed Retiring Board might have been materially different if the plaintiff's complete medical records had been available to it, and it directed, in the name of the Secretary of War, that the findings of the retiring board be disapproved. Two days later, the War Department advised the plaintiff that new evidence not previously available had come to light; that if this evidence had been available

to the retiring board, the findings of the board and the action of the War Department would have been materially influenced thereby; that the plaintiff was not entitled to retired pay. The letter tendered the plaintiff the opportunity of being recalled to active duty at the Walter Reed Hospital and appearing before a new retiring board.

The plaintiff replied, asking what the new evidence was. The War Department's reply summarized the 1938 Walter Reed Hospital information, including the fact that the May diagnosis of valvular heart disease had been changed on July 20 to read "Neurocirculatory asthenia, mild, cause undetermined." In a second paragraph it gave the plaintiff the apparently irrelevant information that disabilities incurred while serving with the Civilian Conservation Corps were not a basis for retirement pay.

The plaintiff, through counsel, made several written requests to have his retired pay reinstated. In a letter of July 14, 1948, he furnished the Adjutant General copies of letters not then in the Army files, including the Adjutant General's letter to the plaintiff's physician, and the letters written by the Army at the time of the plaintiff's entry into active service. The Adjutant General replied on September 27, 1948, stating that if all the evidence had been available, different findings might reasonably have been reached to the effect that the plaintiff was not entitled to retired pay; that therefore the case had been reopened and the findings of the retiring board disapproved. The letter further stated:

"Major Loth's entire record has again been carefully reviewed in the Office of The Surgeon General resulting in the expressed view that he is permanently incapacitated for active service by reason of valvular heart disease but that this incapacity resulted from a natural progression of a defect which antedated his entrance on active duty in World War II (4 April 1942) and, consequently, is not the result of an incident of the service."

This quoted statement not only reopened the case but reclosed it adversely to the plaintiff. The prior communications and, indeed, this one, had said that on the basis of the additional evidence, a retiring board might reasonably have reached a different conclusion, but the quoted language shows that the conclusion had been reached.

The Adjutant General's letter went on to say that actions of the department to date had left two matters undecided. It said that no army retiring board to date had considered the case from the standpoint of possible aggravation of the disease while in the service. This statement was erroneous. All the medical testimony before the Camp Lee Retiring Board had been to the effect that the plaintiff's condition must have, in the nature of things, had its origin before entry into service, but that it had been aggravated by the service and hence was incurred in the line of duty.

The other matter left undecided according to the Adjutant General's letter, was as to the neurotic depressive reaction, which had been found as an additional disability by the Walter Reed Retiring Board. The board had found that disability, along with the valvular heart disease, to be service-connected. That finding had been approved. The new evidence seems to have had nothing to do with that. Yet it was set aside along with the finding about the heart disease.

The Adjutant General then offered to the plaintiff the opportunity, at his own expense, to enter Walter Reed Hospital for further observation, necessary treatment, appearance before a disposition board and, if indicated, before a new Army retiring board. He further suggested that the plaintiff had a right to request a review of his case by the Army Disability Review Board at any time within fifteen years, and enclosed appropriate forms for such a request.

It is, to say the least, doubtful whether the Disability Review Board would have had the power to give the plaintiff any relief. He had not been released from active service, without pay, for physical disability pursuant to the decision of a retiring board, as the statute specified. Section 302(a) of the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 693i. The board's decision had been favorable and he had no objection to its findings. Furthermore, until the Supreme Court's denial of certiorari, 345 U.S. 994, 73 S.Ct. 1135, 97 L.Ed. 1401, June 15, 1953, in this court's cases of Frame, Ramsey, and Thomas, 124 Ct.Cl. 557, 830, 833, even if the Disability Review Board decided favorably to the officer, he was not paid for the time during which he was wrongfully denied his retired pay.

The plaintiff's counsel urges many reasons for a favorable decision, and it would be interesting and instructive to consider them all in detail. But among these reasons, the dominant one is, we think, that the plaintiff did not receive fair treatment, due process of law. The reason, which perhaps was an excuse, so far as attributing any personal culpability for some of the conduct in this case, must lie in the great numbers of persons and documents with which the officials concerned had to deal. But when an individual comes into court and asserts his rights, the court should not deny him those rights because other officials who have previously dealt with him were too pressed with work to give careful consideration to his claim.

It was completely unfair to nullify the plaintiff's right to retired pay without any semblance of notice or hearing. He was thus thrown back to the foot of the ladder which he had laboriously climbed. The action was taken hastily and without any effort to gather the relevant evidence. The evidence which it was the Department's practice and its agents' duty to gather before taking action deeply injurious to the plaintiff would have, we think, convinced anyone who weighed the evidence before he acted, that there was no good ground for the action. When an officer who had been most meticulously examined in 1942 with regard to the condition of his heart had been found fit for

active service in the Army, had actively served for three years and then broken down with heart disease, what possible difference could it have made that in 1938 a preliminary diagnosis, later recanted by the only medical officer who made it, had attributed heart disease to him. The medical officers who testified before the Retiring Board at Camp Lee said that the disease, in some degree, must have antedated the plaintiff's entry into service in 1942. Yet that board, in its formal finding, said that the disability was incurred in the line of duty. Obviously, what they meant was that it became disabling in the course of and because of the service. We suppose that the last retiring board at Walter Reed thought of it in the same way, since they had the same medical history before them.

According to the Adjutant General's letter of September 27, 1948, the Surgeon General's office was willing and able to take the responsibility for supplanting the retiring board and deciding adversely to the plaintiff, that his heart disease had not been incurred in the service. Why could they not equally have decided in his favor that it had been aggravated by his service? Was it supposed that incipient heart disease so slight in 1938 that, after weeks of observation in one of the best facilities in the country, it was definitely ruled out; which, during more than three years of active civilian life, did not reappear; which, upon careful examination on entry into active service in 1942, could not even be detected; would in its normal progress lay a man low in 1945?

The Government urges that we should not consider and decide the plaintiff's case because he did not exhaust his administrative remedies. It concedes that there was no statutory requirement that the plaintiff should take the additional procedural steps which the Adjutant General prescribed in his letter. It urges rather, that in our discretion, and for the sake of orderly governance, we should send him back to the executive department. Our discretion pulls strongly in the other direction in this case. The plaintiff was given the opportunity, at great expense to himself, to once more fight his way up through a disposition board and a retiring board to a review by the Surgeon General's office. But that office had already decided that the plaintiff's disease was not incurred in the service, had disregarded the medical testimony that it was aggravated by his service; had set aside, for no apparent reason, the retiring board's finding of a second, service incurred, disabling disease, neurotic depressive reaction which had led the officer to attempted suicide. We think the plaintiff was not unreasonable in concluding that the quest for relief in the department was a most unpromising speculation which he was not willing to undertake.

The plaintiff's executors are entitled to judgment. Entry of judgment will be suspended, as stated in our conclusion of law.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER, and LITTLETON, Judges, concur.